[No. B016342. Second Dist., Div. Six. Sept. 4, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES ALLEN RICHBOURG, Defendant and Appellant.

**COUNSEL**

Philip R. Clarkson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gary R. Hahn and William T. Harter, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, J.**—Defendant James Allen Richbourg was convicted of two counts of vehicular manslaughter, a violation of Penal Code section 192.3, subdivision (d).[1] His sole contention on appeal is that the court erred in failing to dismiss his case because the vehicle he was driving was destroyed prior to his arraignment. We disagree and affirm the judgment.

The case was submitted to the court on a preliminary hearing transcript and various stipulations. The charges arose out of an accident at 10:30 a.m. on May 29, 1984, involving a motor home (a 1959 Chevrolet housecar) driven by Richbourg, and a pickup truck traveling in the opposite direction. The housecar was owned by the passenger, Joseph Lioon. The housecar began a "fishtailing" movement as it came around a curve, and went off the shoulder. It then went over the double yellow line and collided head on with the pickup truck killing its passenger.

Richbourg's blood alcohol reading approximately three hours after the accident was .25. Richbourg's testimony through stipulation was that prior to entering the curve his speed was 50 miles an hour. He could not control the housecar which was going all over the road before it rolled over. At the hospital he told Officer Lukens that "something went wrong with the steering. Please check it."

Lioon testified that as Richbourg was driving the housecar down a hill before they reached the curve where the accident occurred, he told Richbourg they were going too fast and to brake.

Another highway patrol officer at the scene made the decision to store the housecar at Dave's Club Service, a towing yard, rather than have it impounded.

Officer Lukens asked David Allen, a mechanic, to examine the motor home. Lukens, who is a customer of Allen, asked him to perform this task because the regular California Highway Patrol inspector was not available. Allen examined the steering and found it to be in good order. He found that the rubber flexible connection in the steering column was torn, but stated

---

[1]This section has since been amended.

that he believed the tear occurred when the vehicle rolled over. In his opinion, even if the tear had occurred prior to the accident, "the steering would not have been lost. [¶] It would have been rough; it would have exhibited a slight amount of play in the steering wheel, and it would have given it a distinct warning that something had changed if this had torn ahead of time."

The towing service had a lien on the vehicle for towing and storage and on July 19, 1984, the vehicle was sold at a lien sale to a salvage company which took possession of the vehicle on August 14, 1984, and cut it into scrap.

California Highway Patrol Officer Cipres testified that although normally a vehicle is impounded when it is involved in a fatal accident, in this case the housecar was stored in a private towing yard. Cipres testified that the decision whether to store or impound the vehicle is made by the investigating officer in the field and that either decision is proper.

The owner of the towing service testified that when vehicles involved in fatal accidents are stored in his yard, it is his policy to call the highway patrol if he has any doubts about how to handle the car. In all cases he requires identification and documentation showing ownership before he permits anyone to have access to the vehicle. In this case, an individual was allowed to remove his personal items from the vehicle only after permission was received from Officer Cipres and a written release obtained from the owner.

He also testified that before selling the vehicle at a lien sale, he would first have to receive a "Notice of Stored Vehicle" form from the highway patrol. Neither Richbourg nor the owner of the housecar was given notice of the lien sale. On October 19, 1984, two months after the vehicle had been destroyed, the People filed their case against Richbourg.

The trial judge found that "the Highway Patrol did not legally come into possession or control . . ." of the housecar, that the highway patrol acted in good faith in storing the vehicle, and had no duty to keep it for Richbourg's benefit. Therefore, he denied Richbourg's motion to dismiss.

### Discussion

Here, the officers acted in accordance with Vehicle Code section 22651 which provides in pertinent part: "Any peace officer . . . may remove a vehicle from a highway located within the territorial limits in which the officer or employee may act under any of the following circumstances:

". . . . . . . . . . . . . . . . . . . . . . . . .

"(b). When any vehicle is parked or left standing upon a highway in a position so as to obstruct the normal movement of traffic or in a condition so as to create a hazard to other traffic upon the highway. . . .

"(g). When the person or persons in charge of a vehicle upon a highway are by reason of physical injuries or illness incapacitated to an extent so as to be unable to provide for its custody or removal.

"(h). When an officer arrests any person driving or in control of a vehicle for an alleged offense and the officer is, by this code or other law, required or permitted to take, and does take, the person arrested before a magistrate without unnecessary delay."

The registered owner of a vehicle must be given notice prior to a lien sale. (See Veh. Code, § 22851.8 and Civ. Code, § 3067.1 et seq.)

Although the officers did not seize the vehicle as they would have if it were impounded, Richbourg argues that they still exercised dominion and control over the vehicle and its contents. Therefore, he contends we need not be concerned whether the vehicle was stored or impounded. He points out that the highway patrol caused the vehicle to be stored, and gave permission to the towing yard to release property in the vehicle. The president of the towing company testified that during the 20 years vehicles were stored in his yard by the California Highway Patrol, he took no action concerning a stored vehicle without first checking with the highway patrol. The housecar was not sold at a lien sale until approval was first obtained from the highway patrol.

The control of the housecar exercised by the highway patrol consisted of examining it at the request of Richbourg, and protecting its contents. The highway patrol did nothing to prevent Richbourg from examining the vehicle, and did not initiate action to sell the vehicle. Even if the highway patrol had exercised the same kind of control and dominion over the vehicle as if they had impounded it, Richbourg is not entitled to a dismissal.

In *California* v. *Trombetta* (1984) 467 U.S. 479 [81 L.Ed.2d 413, 104 S.Ct. 2528], police officers who had possession of breath samples taken from drivers accused of driving under the influence of alcohol, failed to preserve the samples. The samples were tested by an "Intoxilyzer" which measures the concentration of alcohol in the blood of motorists suspected of driving under the influence of intoxicating liquor. Defendants were not

denied due process by the failure of the state to preserve the potentially exculpatory evidence on behalf of the defendants.

The *Trombetta* court held that the failure to preserve the breath samples did not run afoul of the defendants' constitutional rights to obtain from the prosecution evidence material to their guilt as required by *Brady* v. *Maryland* (1963) 373 U.S. 83 at page 87 [10 L.Ed.2d 215, 83 S.Ct. 1194]. The officers did not destroy the defendants' "breath samples" in a calculated effort to circumvent the disclosure requirements established by *Brady* v. *Maryland* and its progeny. In failing to preserve breath samples for respondents, the officers here were acting "'in good faith and in accord with their normal practices.' [Citations omitted.] The record contains no allegation of official animus towards respondents or of a conscious effort to suppress exculpatory evidence." (*Id.*, at p. 488 [81 L.Ed.2d at p. 422].)

Here Officer Cipres testified that it is an acceptable practice to store a vehicle rather than impound one. The trial judge's finding that the officers acted in good faith is supported by the record. There is no evidence of a calculated effort to suppress exculpatory evidence. From the officer's point of view, the evidence was inculpatory rather than exculpatory. Any exculpatory value of the evidence was therefore not apparent before it was destroyed. We disagree with Richbourg that the condition of the steering mechanism was such that it was a great probability that reasonable minds could differ as to its condition prior to the accident.

The *Trombetta* case also mentioned other tests the court must consider in determining the reach of the due process clause to decide when the state must preserve evidence in its possession for a defendant in a criminal prosecution. ■ A constitutional duty to preserve evidence "must be limited to evidence that might be expected to play a significant role in the suspect's defense. [Fn. omitted.] To meet this standard of constitutional materiality, [citation omitted] evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (*Id.*, at pp. 488-489 [81 L.Ed.2d at p. 422].)

In *Trombetta*, defendants were not denied a fair trial. The Intoxilyzer interpreted the breath samples. The accuracy of the Intoxilyzer had been reviewed and certified by the California Department of Health. There was an opportunity for defendants to inspect the particular Intoxilyzer used to test their breath samples, and to examine its weekly calibration tests, as well as the breath samples used in those calibrations. There was also the opportunity to cross-examine the officer who administered the test. Since

the defendants had other means of demonstrating their innocence, and the samples would more likely be of inculpatory rather than exculpatory value, the destruction of the breath samples did not offend principles of due process.

Richbourg is in a position much like the defendants in *Trombetta*. Although Richbourg did not have the steering mechanism, he had the opportunity to cross-examine the prosecution's expert. He could have presented his own expert who, although deprived of the opportunity to actually examine the steering mechanism, could nevertheless offer an opinion concerning the alleged faulty steering mechanism, and could possibly challenge the findings of the prosecution expert. Richbourg, of course, also had the opportunity to testify himself about the steering mechanism, and to call the owner of the vehicle to testify about the "play," if any, he had experienced in the steering mechanism when driving the car.

In *Trombetta*, the evidence of the properly operating Intoxilyzer which analyzed the defendants' breath samples, led the court to conclude that the breath samples would more likely be inculpatory rather than exculpatory. Here, the evidence of the People's expert leads to the same conclusion. On cross-examination, the People's expert testified that if the steering mechanism was in its damaged condition prior to the accident, a driver would have no difficulty steering the vehicle and would be able to operate it safely and keep it under control.

The judgment is affirmed.

Stone, P. J., and Abbe, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 19, 1986. Bird, C. J., was of the opinion that the petition should be granted.